IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY SOLDRIDGE, JR.,** | : | |
| **Plaintiff** | : | |
| | : | No. 1:21-cv-01594 |
| v. | : | |
| | : | (Judge Kane) |
| **KEVIN RANSOM, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court is pro se Plaintiff Barry Soldridge, Jr. ("Plaintiff")'s amended complaint filed pursuant to 42 U.S.C. § 1983. (Doc. No. 9.) For the reasons set forth below, the Court will dismiss the amended complaint. The Court will also, however, grant Plaintiff leave to file a second amended complaint.

I.   BACKGROUND

On September 15, 2021, Plaintiff, who is presently incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI Dallas"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Superintendent Kevin Ransom ("Ransom") and Supervisor Carl Kuren ("Kuren"). (Doc. No. 1.) In his complaint, Plaintiff alleged that on September 21, 2020, he was working in the mattress shop at SCI Dallas when he was assaulted with a pair of shop scissors by inmate Steve Heard. (Doc. No. 1 at 1.) Plaintiff averred that he suffered "nineteen (19) stab wounds to [his] back." (Id.) According to Plaintiff, Defendant Kuren issued him a misconduct for "fighting with closed fists." (Id.) Plaintiff averred that he never struck the other inmate and that it would have been impossible for him to do so if the other inmate was "stabbing [him], quite literally, in the back." (Id.) Plaintiff alleged that the hearing examiner "reviewed the video footage of the incident and admit[ted] in his report that the video clearly proves that [Plaintiff] did NOT throw a punch." (Id.) As relief, Plaintiff

requested that the Court quash the misconduct and "grant him his same job back or equal employment." (Id.) Plaintiff also sought "compensation, at base pay, for the time lost in employment, as a result of the false allegations by [Defendant] Kuren in his misconduct report." (Id.)

Plaintiff paid the full filing fee on September 29, 2021. (Doc. No. 5.) In a Memorandum and Order dated November 9, 2021, the Court dismissed Plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). (Doc. Nos. 7, 8.) Specifically, the Court concluded that: (1) Plaintiff had failed to state a claim for relief against Defendant Ransom because the complaint was devoid of any allegations related to him; (2) Plaintiff had failed to set forth a plausible Fourteenth Amendment due process claim against Defendant Kuren; and (3) nothing in the complaint could be construed as raising an Eighth Amendment failure to protect claim against Defendant Kuren. (Doc. No 7 at 5-6 & n.2.) The Court granted Plaintiff leave to file an amended complaint within thirty (30) days. (Doc. No. 8.)

Plaintiff filed his amended complaint on December 6, 2021. (Doc. No. 9.) Plaintiff avers that on September 21, 2020, he was working in the Correctional Industries mattress shop at SCI Dallas when he had an argument with another inmate about closing the shop windows. (Id. at 4-5.) Inmate Steve Heard "made it a point to get involved in the argument even though it was over." (Id. at 4.) Plaintiff told inmate Heard to "mind his own business and go away." (Id.) Inmate Heard "was agitated[,] and returned to his work area to grab a pair of scissors." (Id.) Inmate Heard approached Plaintiff from behind and started stabbing him. (Id.) Plaintiff admits that "when [inmate Heard] surprised [him Plaintiff] [pushed] him back out of [his] space[,] and that is when he started stabbing [Plaintiff]." (Id.) Plaintiff avers that there is video of the event. (Id.)

Plaintiff claims that the "shop supervisors did not call it in on the radio or intervene, they did nothing." (Id.) Defendant Kuren issued a misconduct noting that Plaintiff and inmate Heard were "fighting with closed fists." (Id.) Plaintiff maintains that if Defendant Kuren "was doing his job correctly he would have seen the scissors and used the radio for the right help." (Id.) According to Plaintiff, the fact that Defendant Kuren wrote the misconduct for fighting with closed fists "proves he was not paying attention, [and Plaintiff's] safety and the shop [were] put at risk." (Id at 6.) Plaintiff also alleges that Defendant Ransom, as the Superintendent, has "a duty to make sure his staff are properly trained plus educated to follow [protocol] during [these] types of situations." (Id.) He avers that Defendant Ransom denied his appeal even though Plaintiff "clearly pointed out the [staff's] misconduct." (Id.) Plaintiff notes that he spent thirty (30) days in the Restricted Housing Unit ("RHU") "for fighting and never threw a punch." (Id.) Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights. (Id. at 7.) As relief, he requests that the Court quash the misconduct, grant him monetary compensation, and direct that the Department of Corrections ("DOC") give him "his same job back or equal employment." (Id. at 8.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's amended complaint.

## II. LEGAL STANDARDS

### A. Screening and Dismissal of Prisoner Complaints

Although Plaintiff paid the filing fee in full, the Court has the authority to screen his amended complaint pursuant to 28 U.S.C. § 1915A. See Shane v. Fauver, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis). Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. See 28 U.S.C. § 1915A(b)(1).

In dismissing claims under § 1915A, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Plaintiff's Amended Complaint

#### 1.   Claims Against Defendant Ransom

As noted supra, Plaintiff avers that Defendant Ransom, as the Superintendent, has "a duty to make sure his staff are properly trained plus educated to follow [protocol] during [these] types of situations." (Doc. No. 9 at 6.) He also suggests that Defendant Ransom violated his rights by denying his appeal when Plaintiff "clearly pointed out the [staff's] misconduct." (Id.) Inmates, however, do not have a constitutional right to a grievance procedure. See Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (finding that "[t]he District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them"); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Plaintiff's claims against Defendant Ransom regarding the handling of his appeal will, therefore, be dismissed.

Plaintiff also appears to assert claims against Defendant Ransom based upon his respective supervisory position. Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Upon review of Plaintiff's amended complaint, the Court concludes that it fails to set forth a plausible supervisory liability claim against Defendant Ransom. The amended complaint is devoid of allegations that Defendant Ransom had knowledge of and acquiesced in any alleged

7

constitutional violations by his subordinates. See A.M., 372 F.3d at 586. Moreover, Plaintiff fails to identify a custom or policy that caused his alleged constitutional injury. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). Accordingly, any supervisory liability claims against Defendant Ransom will also be dismissed.

Plaintiff also suggests that Defendant Ransom is liable for failing to provide adequate training. A claim for liability based upon a failure to train involves the same four (4) elements set forth supra for the second theory of supervisory liability. See Sample, 885 F.2d at 1118. A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and where that failure to train "actually causes injury." See City of Canton v. Ohio, 489 U.S. 378, 390 (1989). In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program . . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

See id. at 390-91. As noted supra, Plaintiff has failed to allege that an existing policy created a risk of constitutional injury. The Court, therefore, will dismiss Plaintiff's claims against Defendant Ransom.

### 2. Eighth Amendment Claims Against Defendant Kuren

As noted supra, Plaintiff suggests that Defendant Kuren's alleged actions or inaction violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. See Wharton v. Danberg, 854 F.3d 234, 247 (3d Cir.

2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." See Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." See id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See Wilson, 501 U.S. at 298.

Plaintiff explicitly notes that he is asserting a conditions of confinement claim because "[a] violent inmate with a pair of scissors should have been taken seriously." (Doc. No. 9 at 4, 6.) The Court also liberally construes Plaintiff's amended complaint to be asserting an Eighth Amendment failure to protect claim against Defendant Kuren. The Court considers both claims below.

### 1.     Conditions of Confinement

To determine whether an inmate has set forth a plausible Eighth Amendment claim concerning his conditions of confinement, the Court "appl[ies] a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" See Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825,

834 (1994)). An official shows deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837.

In his amended complaint, Plaintiff avers that "[a] violent inmate with a pair of scissors should have been taken seriously," and that the fact that Defendant Kuren wrote a misconduct for fighting with closed fists "proves he was not paying attention." (Doc. No. 9 at 6.) Plaintiff alleges that if Defendant Kuren "was doing his job correctly he would have seen the scissors and used the radio for the right help." (Id. at 4.) Plaintiff's amended complaint, however, "does not contain sufficient factual matter from which the Court may conclude that [Defendant Kuren was aware that inmate Heard posed an excessive risk] of harm [to Plaintiff] and consciously disregarded that risk." See Gerholt, 858 F. App'x at 35 (citing Farmer, 511 U.S. at 837).[2] Plaintiff, therefore, has failed to plausibly allege deliberate indifference. The Court will, however, grant Plaintiff leave to file a second amended complaint so that he can attempt to cure the pleading deficiencies of his conditions of confinement claim.

### 2. Failure to Protect

The Eighth Amendment requires prison officials to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." See Farmer, 511 U.S. at 833. While prison officials have the duty to protect prisoners from attacks by other prisoners, not every injury suffered by a prisoner at the hands of another implicates liability for the officials responsible for that inmate's safety. See id. at 833-34. Rather, an inmate raising a failure to protect claim under the Eighth Amendment must establish that a prison official both knew of and

---

[2] To the extent Plaintiff alleges an Eighth Amendment violation based upon his placement in the RHU, he cannot maintain such a claim because nothing in the amended complaint suggests that his basic needs were not being met during his placement there. See Gibson v. Lynch, 652 F.2d 348, 350, 352 (3d Cir. 1981); see also Williams v. Armstrong, 566 F. App'x 106, 109 (3d Cir. 2014).

10

chose to disregard an "excessive risk to inmate health or safety." See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837). To satisfy deliberate indifference, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." See id. at 125.

The amended complaint, as discussed supra, is devoid of facts from which the Court could conclude that Defendant Kuren was aware that inmate Heard intended to attack Plaintiff and that Defendant Kuren consciously disregarded that threat. The Court, therefore, will dismiss Plaintiff's Eighth Amendment failure to protect claim against Defendant Kuren. However, the Court will also grant Plaintiff leave to file a second amended complaint so that he can attempt to cure the pleading deficiencies of his failure to protect claim.

**B.    Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

As discussed above, the Court will grant Plaintiff leave to file a second amended complaint so that he can attempt to cure the pleading deficiencies of the Eighth Amendment claims that he has asserted against Defendant Kuren—namely, a conditions of confinement claim and a failure to protect claim. Although Plaintiff's original complaint was also dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted, that complaint did not raise an Eighth Amendment claim against Defendant Kuren. Consequently, Plaintiff asserted his Eighth Amendment claims against Defendant Kuren for the first time in his amended complaint. Thus, given the applicable pleading standards, which allow for amendments to be liberally granted, the Court will provide Plaintiff with a final opportunity to amend his Eighth Amendment claims against Defendant Kuren so that he can attempt to cure the pleading deficiencies identified in this Memorandum.

### IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's amended complaint (Doc. No. 9) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). The Court will also, however, afford Plaintiff a final opportunity to amend his Eighth Amendment claims against Defendant Kuren—namely, a conditions of confinement claim and a failure to protect claim. An appropriate Order follows.